# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 566 | **DATE** | 4/15/2004 |
| **CASE TITLE** | NeoMedia Technologies, Inc. vs. AirClic, Inc. et al | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION:** AirClic's and Scanbuy's motions (Docs 6-1 & 9-1) to dismiss for lack of personal jurisdiction are granted. All other pending motions are denied as moot. Ruling set for April 22, 2004 is stricken as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | |
| | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | |
| ✓ | Docketing to mail notices. | |
| ✓ | Mail AO 450 form. | |
| | Copy to judge/magistrate judge. | |

SCT / courtroom deputy's initials

number of notices

APR 1 6 2004
date docketed

docketing deputy initials

date mailed notice

Date/time received in central Clerk's Office

mailing deputy initials

**Document Number**

21

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NEOMEDIA TECHNOLOGIES, INC., a<br>Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>AIRCLIC, INC., a Delaware corporation;<br>SCANBUY INC., a New York corporation; and<br>LSCAN TECHNOLOGIES, INC., a Delaware<br>corporation,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 04 C 566 |

DOCKETED

APR 1 6 2004

## <u>MEMORANDUM OPINION</u>

CHARLES P. KOCORAS, Chief District Judge:

This matter comes before the court on Defendants AirClic, Inc.'s ("AirClic") and

Scanbuy, Inc.'s ("Scanbuy") motions to dismiss pursuant to Federal Rules of Civil

Procedure 12(b)(2) and (3), or in the alternative to transfer the action. For the reasons

set forth below, the motions to dismiss are granted.

## BACKGROUND

Because this is a motion to dismiss, we initially accept all well pleaded facts and

allegations in the complaint as true and construe all inferences in favor of the Plaintiff.

Thompson v. Illinois Dep't of Prof'l Regulation, 300 F.3d 750, 753 (7th Cir. 2002).

However, since personal jurisdiction is a ground for dismissal, we may consider affidavits from the parties. Turnock v. Cope, 816 F.3d 332, 333 (7th Cir. 1987). We will resolve factual disputes in the pleadings in favor of the Plaintiff, but take as true those facts propounded by the Defendants' affidavits that are unrefuted by the Plaintiff. RAR, Inc. v. Turner Diesel, Ltd., 107 F.3d 1272, 1275 (7th Cir. 1997).

Plaintiff NeoMedia Technologies, Inc. ("NeoMedia") is a Delaware corporation with a place of business in Lisle, Illinois. NeoMedia is in the business of providing electronic services that, *inter alia*, allow information concerning physical objects and documents to be accessed over the Internet by scanning bar-codes affixed to the particular document or object. NeoMedia owns four patents relating to this bar-code scanning process. AirClic is a Delaware corporation with its principal place of business in Newtown, Pennsylvania. Scanbuy is a Delaware corporation with its principal place of business in New York City. Both AirClic and Scanbuy offer services and products that allow information to be accessed over the Internet through the scanning of bar-codes. On January 26, 2004, NeoMedia filed a complaint in this court contending that AirClic, Scanbuy, and a third defendant[1] infringed on its patents.

In its complaint, NeoMedia bases its jurisdictional claims on allegations that AirClic and Scanbuy are registered to transact business in Illinois, do transact business

---

[1] Defendant LScan Technologies, Inc. has not filed a motion to dismiss.

in Illinois and this district, and have committed patent infringement within this district. After reviewing affidavits submitted by AirClic and Scanbuy, it appears that their connections to Illinois are significantly less robust than as asserted in NeoMedia's complaint. Neither corporation is licensed or registered in, nor has any offices, customers, facilities, or assets in Illinois. AirClic and Scanbuy have not sold products to Illinois customers, solicited business here, or conducted commercial activities in the state. NeoMedia cannot point to a specific act of infringement within Illinois by either defendant.

This does not mean that the connections between AirClic, Scanbuy and Illinois are nonexistent. Both corporations have websites that allow Illinois users to electronically submit contact information and later receive information about their products and services. Scanbuy's website contains a hyperlink to a firm that allegedly sold an infringing product to an Illinois resident. At the time the lawsuit was filed, Scanbuy's website listed that its Vice President for Business Development was based in Illinois. AirClic has strategic partnerships with Illinois corporations, has attended trade shows in Chicago, and had an employee living in Illinois.

AirClic and Scanbuy now move to dismiss NeoMedia's complaint on for lack of personal jurisdiction and improper venue. In the alternative, they request that we transfer the case to other venues.

## LEGAL STANDARD

"The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990) (quoting Triad Assocs., Inc. v. Chicago Hous. Auth., 892 F.2d 583, 586 (7th Cir. 1989)). A complaint need only specify "the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer." Higgs v. Carver, 286 F.3d 437, 439 (7th Cir. 2002) (citing Beanstalk Group, Inc. v. AM General Corp., 283 F.3d 856, 863 (7th Cir. 2002)). Dismissal is proper only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). With these principles in mind, we now address the motion before us.

## DISCUSSION

Because this is a patent infringement case, we apply Federal Circuit law to determine whether personal jurisdiction may be exercised over a defendant. Hildebrand v. Steck Mfg. Co., Inc., 279 F.3d 1351, 1354 (Fed. Cir. 2002). To survive a motion to dismiss, a plaintiff need only make a *prima facie* showing that the defendants are subject to personal jurisdiction. Electronics For Imaging, Inc. v. Coyle, 340 F.3d 1344, 1349 (Fed. Cir. 2003).

Determining if a court can exercise personal jurisdiction over a nonresident defendant entails two inquiries: whether the forum state's "long-arm" statute permits service of process and whether the assertion of jurisdiction would be inconsistent with due process. Electronics, 340 F.3d at 349. The Illinois "long-arm" statute, 735 ILCS 5/2-209(c), permits Illinois courts to exercise personal jurisdiction over a defendant on any basis allowed under the due process clauses of the federal and Illinois Constitutions. Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp., 230 F.3d 934, 939 (7th Cir. 2000). While the two constitutions do not necessarily contain the same guarantees of due process, Rollins v. Ellwood, 141 Ill. 2d. 244 (Ill. 1990), the Seventh Circuit has repeatedly suggested that "there is no operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction." Hyatt Int'l Corp. v. Coco, 302 F.3d 707, 715 (7th Cir. 2002).

The federal test for determining personal jurisdiction begins with the now familiar requirement that the defendant must have "purposefully established minimum contacts within the forum state," Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985), "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 316 (1946) (citation omitted). Under this "minimum contacts" test, a defendant

-5-

may be subject to either specific or general jurisdiction. <u>LSI Indus., Inc. v. Hubbell Lighting, Inc.</u>, 232 F.3d 1369, 1375 (Fed. Cir. 2000). General jurisdiction arises when a defendant maintains "continuous and systematic" contacts with the forum state even when the cause of action has no relation to those contacts. <u>Id.</u> (citing <u>Helicopteros Nacionales de Columbia, S.A. v. Hall</u>, 466 U.S. 408, 414-16 (1984)).[2] Specific jurisdiction "arises out of" or "relates to" the cause of action even if those contacts are "isolated and sporadic." <u>LSI Indus.</u> at 1375 (citing <u>Burger King</u> at 472-473). Establishing specific jurisdiction requires the plaintiff to demonstrate that the defendant "should reasonably anticipate being haled into court [in the forum State]," <u>Burger King</u> at 474 (quoting <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297 (1980)), because through "some act" the defendant has "purposefully availed itself of the privilege of conducting activities" there. <u>Burger King</u> at 475 (quoting <u>Hanson v. Denckla</u>, 357 U.S. 235, 253 (1958)). In addition, the assertion of specific jurisdiction over the defendant must be "reasonable and fair". <u>HollyAnne Corp. v. TFT, Inc.</u>, 199 F.3d 1304, 1307 (Fed. Cir. 1999).

---

[2] Neither the Supreme Court nor the Federal Circuit has outlined a specific test to follow when analyzing whether a defendant's activities within a state are "continuous and systematic" so a court must look at the facts of each case to make such a determination. <u>LSI Indus.</u> at 1375.

Because NeoMedia's primary arguments for jurisdiction are based on AirClic's and Scanbuy's websites, we will first examine the relationship between a defendant's Internet activity and personal jurisdiction. Courts in this district have espoused a "sliding scale" approach, first formulated in Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1123-24 (W.D. Pa. 1997), that classifies particular Internet activity into one of three categories. See Infosys Inc. v. Billingnetwork.com, Inc., 2003 WL 22012687 (N.D. Ill. 2003); Berthold Types Limited v. European Mikrograf Corp., 102 F. Supp. 2d. 928 (N.D. Ill. 2000); Ty Inc. v. Clark, 2000 WL 51816 (N.D. Ill. 2000). On one end of the Zippo spectrum is the "active" website, where the defendant clearly transacts business over the Internet through its website, such as entering contracts with the user for the sale of goods (Amazon.com is a well known example). Courts "can appropriately exercise personal jurisdiction over those defendants who fall into [this] category by actively conducting business on the Internet." Berthold at 932. At the opposite end of the Zippo scale is the "passive" website, one in which a defendant has posted information on the Internet, but does not facilitate further online communication or interaction. Courts cannot exercise personal jurisdiction over defendants in this category "who simply operate passive web sites that merely provide information or advertisements without more." Id. at 933. There exists the potential for jurisdiction in the "middle ground" or "hybrid" category, which is occupied by interactive websites

where the user can exchange information with the defendant operator. <u>Zippo</u> at 1124. "In these cases, the exercise of jurisdiction is determined by examining the interactivity and commercial nature of the exchange of information that occurs on the [website.]" <u>Id.</u> The parties are in agreement that AirClic's and Scanbuy's websites belong in this middle category. However, because the defendants' websites contain different features, their impact (as well as each defendant's other relevant contact with Illinois) on personal jurisdiction will be analyzed separately below.

Before examining each defendant's website and susceptibility to jurisdiction in Illinois, it should be noted that courts in this district have used the <u>Zippo</u> framework for determining general jurisdiction (<u>Infosys</u>), specific jurisdiction (<u>Berthold</u>), or both (<u>Ty</u>). However, in reviewing Northern District cases involving "middle ground" websites, Judge Zagel has remarked that he found "no case where general jurisdiction was conferred on the basis of an interactive website in the absence of non-website factors evidencing intent for a particular product or website to reach a particular state." <u>Infosys</u> at *4.[3] Because all websites could be said to continuously and systematically contact every state–or for that matter any country–by their natural accessability over

---

[3] For instance, in <u>Publications Int'l, Ltd. v. Burke/Trilo, Inc.</u>, 121 F. Supp. 2d 1178 (N.D. Ill. 2000), the court applied <u>Zippo</u> and found general jurisdiction not only on the basis of a hybrid interactive website on which users could request a catalogue that allowed them to place orders, but that the defendant website owner had extensively distributed materials in Illinois.

the Internet, Judge Zagel's observation suggests that in the context of "hybrid" websites, whether general or specific jurisdiction exists boils down to whether the defendant "purposely directed its activities at the residents of the forum." Id. at *4 (citing HollyAnne, 139 F.3d at 1307).

**AirClic**

AirClic's "hybrid" interactive website advertises its products but does not allow for transactions to be conducted over the Internet. Its website does allow users, including Illinois residents, to submit contact information to AirClic and then receive information from AirClic pertaining to its products and services. Nothing on AirClic's website is specifically targeted at Illinois consumers.[4] Nor has NeoMedia demonstrated that any of AirClic's products or services have reached Illinois, either via its website or otherwise. In itself, AirClic's website, which is not targeted at Illinois, does not allow for online commercial transactions but provides for the exchange of information, does not reach the level of commercial interactivity required under this district's standard for personal jurisdiction, either specific or general. See Berthold; Ty; Infosys; Haggerty Enterprises, Inc. v. Lipan Indus. Co., Ltd., 2001 WL 968592 (N.D. Ill. 2001).

_____

[4] Whether a website is specifically targeted towards a particular forum is a factor to be considered in determining jurisdiction based on a hybrid website. Berthhold, 102 F. Supp. 2d. at 933; Infosys, 2003 WL 2201687 at *4.

Because non-website factors can tip the jurisdictional scales in regards to an otherwise insufficient website, we must examine AirClic's offline contacts with Illinois. NeoMedia alleges that AirClic attended a trade show in Chicago in November 2001. However, attendance at a trade show alone is not enough to establish specific jurisdiction, Black and Decker, Inc. v. Shanghai Xing Te Hao Indus. Co., Ltd., 2003 WL 21383325 (N.D. Ill. 2003), or general jurisdiction, even when coupled with a hybrid website. Berthold, 102 F. Supp. 2d. at 931; LaSalle Nat. Bank. v. Vitro, Sociedad Anonima, 85 F. Supp. 2d. 857, 861 n.4 (N.D. Ill. 2000).

NeoMedia next seeks to establish jurisdiction over AirClic because the latter had an employee who lived in Geneva, Illinois from August 2000 through April 2002. This AirClic employee did not sell AirClic products or services to any Illinois customer and AirClic has never paid taxes in Illinois relating to this employee or otherwise. NeoMedia cites no authority for its proposition that employing a resident from a forum establishes jurisdiction over a non-resident employer. On the other hand, courts in this district and other circuits have held that a court possessing jurisdiction over an instate resident does not have general jurisdiction over the resident's out of state employer. See Palmer v. Kawaguchi Iron Works, Ltd., 644 F. Supp. 327, 331 (N.D. Ill. 1986). NeoMedia does not contradict AirClic's assertions, via affidavits, that AirClic's

employee's presence in Illinois had nothing to do with the present litigation. Specific jurisdiction on this ground is unwarranted as well. HollyAnne, 199 F.3d at 1307.

NeoMedia's remaining basis for establishing personal jurisdiction over AirClic is its alleged "strategic partnerships" with Illinois corporations Motorola and R.R. Donnelley & Sons ("Donnelley") and its relationship with three companies that sell products in Illinois: Ericsson, Symbol Technologies, and Nextel. Upon reviewing AirClic's uncontroverted affidavits, AirClic's relationships with these companies is not of the continuous and systematic nature required to establish general jurisdiction. For instance, NeoMedia points to press releases and other statements concerning AirClic projects involving Motorola, Ericsson, Symbol, and Donnelley. According to AirClic's affidavits, these projects did not advance beyond the negotiating stage and never came to fruition. AirClic is currently negotiating a trademark license with Motorola, which would allow AirClic to use Motorola's mark. Because Federal Circuit jurisprudence draws a line between doing business in a forum and doing business with a company that does business in the forum, see Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc., 148 F.3d 1355, 1361 (Fed. Cir. 1998),[5] we do not find that AirClic's

---

[5] In Red Wing, the Federal Circuit found that a defendant who had thirty-four licensees who sold products in Minnesota, six of which had stores or were registered to do business in the state, was not subject to general jurisdiction in Minnesota.

relationships with the above companies, whether they are based in Illinois or sell products here, is sufficient to establish general jurisdiction. While NeoMedia bases its allegation that AirClic provides software to Nextel on a press release, our reading of the document draws no such inference. Instead the press release merely mentions that AirClic can provide products and services for mobile bar code scanning applications. Because AirClic's relationships with Illinois companies or companies that sell here were either no longer viable or not of a nature relating to this lawsuit, they are insufficient for Illinois to have specific jurisdiction over AirClic.

After reviewing AirClic's cumulative alleged contacts with Illinois (its website, employee, and relations with other businesses), we conclude that they do not reach the requisite quantum needed to establish specific or general jurisdiction.

**Scanbuy**

Scanbuy's hybrid interactive website is similar to AirClic's in that it allows users to submit contact information and later receive a response, but cannot facilitate online commercial transactions. Accordingly, these features of Scanbuy's website alone cannot provide for personal jurisdiction in Illinois. However, the two websites are not totally analogous in that Scanbuy's website contains hyperlinks[6] to the websites of

---

[6] "Hyperlinks" are highlighted text or images that, when selected by the user, permit him to view another Internet document. LFG, LLC v. Zapata Corp., 78
(continued...)

other companies. One of the these hyperlinked websites is that of Advanced Expo Solutions International ("AESI"), an Indiana based company that sells products, the "Gizmo" and "Gizmo Jr.," that allegedly use Scanbuy software that NeoMedia claims infringes on its patents. Under Zippo, AESI's website falls into the "active" category as users can purchase the Gizmos directly over the Internet. Because Illinois consumers can purchase products from AESI through its website, Illinois courts could appropriately exercise personal jurisdiction over AESI. Berthold, 102 F. Supp. 2d at 932. NeoMedia argues that the hyperlink to AESI's "active" website establishes the requisite connection between Illinois and Scanbuy.

Perhaps the earliest case from this district to discuss the relationship between hyperlinks and personal jurisdiction is LFG, LCC v. Zapata Corp., 78 F. Supp. 2d 731 (N.D. Ill. 1999). In LFG the court analyzed the contacts with Illinois of the defendant's website, which the court classified as a "portal."[7] It determined that the defendant's portal website provided a high degree of contact and interactivity between site and

---

[6] (...continued)
F. Supp. 2d 731, 733 fn. 4 (N.D. Ill. 1999).

[7] The LFG court described "portals" as "'super' web sites that provide a wide variety of services, aiming to be 'one-stop shops' for Internet needs. Portals typically offer access to Internet search engines, email accounts, discussion groups, web sites categorized by topics, and directories, among other things—all free to the user. Portals provide the services at no cost to Internet users, and they generate their income by selling online advertising space." Id. at 736.

user, "such that its success hinges on the number of users interacting with it," but that the website still was a hybrid under Zippo. LFG at 736. The court also examined the portal's hyperlinks, particularly one that linked to a for-profit site that provided information on stocks, commodities and other investments. Id. at 734. Notably, this investment site was owned and operated by an Illinois corporation that the portal-owning defendant had previously attempted to purchase. Id. In deciding that personal jurisdiction was appropriate over the portal, the LFG court did not focus on the fact that the hyperlinked website was available to Illinois users, but rather that it was owned by an Illinois firm with whom the defendant had an extensive prior business relationship (to the point of negotiating with and expecting to buy the company). Id. at 737-39.

Scanbuy's website is different from the LFG portal in a number of regards. The first is that Scanbuy's is a website intended to provide information to customers, current or potential. It is more akin to an advertisement, meant to promote Scanbuy's existing business by attracting new customers. Generally, national advertisements (including those on the Internet) that do not specifically target Illinois are insufficient to subject a defendant to jurisdiction here. David White Instruments, LLC v. TLZ, Inc., 2003 U.S. Dist. LEXIS 8375, *16 (N.D. Ill 2003) (citing Aero Products Int'l, Inc. v. Intex Corp., 64 U.S.P.Q. 2d 1772, 1777 (N.D. Ill. 2002)). This is in contrast to the LFG site which generated profit as a stand-alone venture and sought to entice as many

users as possible to generate advertising revenue, its principal source of income.[8] Next, Scanbuy's website is of a lower degree of interactivity as it does not facilitate a chat room, allow a user to open an email account, or provide general Internet services such as a search engine. Whereas Scanbuy's website promotes the company's products or services online, the LFG portal is in itself a product or service.

As for the hyperlinks, the key distinction for jurisdictional purposes is that AESI is an Indiana company, whose website directly sells devices allegedly containing Scanbuy software. Under Red Wing, this connection alone is too tenuous to satisfy due process requirements. On the other hand, the LFG portal hyperlinked to an Illinois-owned website that the portal's owners had previously targeted for acquisition and in the process had cultivated an extensive business relationship. Regardless of the material contrast between the Scanbuy and LFG sites, other considerations preclude a finding of personal jurisdiction based on the hyperlink. Due to the almost universal accessability of the Internet, if we were to confer personal jurisdiction based on Scanbuy's hyperlink to a non-forum "active" website, it would establish as precedent that any website owner who hyperlinks to a website that conducts business online would be susceptible to personal jurisdiction in every state and district. Our view is

---

[8] The LFG portal sought to "create the felling of community, a kind of 'Internet neighborhood,' to ensure repeated and long visits by users–which makes user contacts extremely important to their underlying business." Id. at 737.

consistent with other decisions from this circuit where general personal jurisdiction could not be established exclusively on the basis of a website's hyperlinks to sites that directly sold infringing products. See David White; Aero Products. It is therefore inappropriate for the hyperlink factor to tip the scales in favor of general jurisdiction in Illinois, when it would otherwise be lacking based solely on Scanbuy's website.

Whether Illinois possesses specific jurisdiction over Scanbuy involves an inquiry into NeoMedia's assertion that Scanbuy products have been sold in Illinois. As an initial matter, the affidavit of Scanbuy COO and CFO Didier Paul Frantz declares that "Scanbuy has never made, used, sold, or otherwise made an offer to sell any of its products to Illinois customers, nor does Scanbuy target Illinois customers in advertising its products [and that n]one of Scanbuy's products has been designed or sold in Illinois." If this is the case, namely that no Scanbuy product has been sold in Illinois, Scanbuy would lack the minimum requisite contact for specific jurisdiction in Illinois. See David White at *16-18. As mentioned above, this assertion will be accepted as true unless it is refuted by NeoMedia. RAR, Inc., 107 F.3d at 1275. NeoMedia claims two instances where Scanbuy products have been sold in Illinois, but whether these assertions are supported by the record must be examined in detail.

NeoMedia first states, in the affidavit of one of its employees residing in Illinois, that the employee was able to request to purchase a Gizmo Jr. over AESI's website.

-16-

The employee's affidavit declares that he has "been informed that the Gizmo and Gizmo, Jr. contain either Scanbuy software or proprietary software to provide their functions." NeoMedia does not allege that Scanbuy actually makes the Gizmo products, only that they contain software produced or licensed by Scanbuy. AESI's website proclaims that it is the "licensed distributor and reseller" of the Gizmos, and does not claim to produce the products. Nor does it identify the source of its licenses. NeoMedia's affidavit and AESI's website, taken together, support the inference that AESI distributes a product, produced by a third party, that contains Scanbuy produced or licensed software. However, there is no showing of a direct financial relationship between Scanbuy and AESI or that AESI sells products manufactured by Scanbuy.

This lack of evidence is critical for jurisdictional purposes. Courts in this district and the Federal Circuit have found that specific personal jurisdiction existed when an infringing product, produced by the defendant, was sold in the forum by a third party that served as a distributor for the infringing defendant's product. See Aero Products; Beverly Hills Fan Co. v. Royal Sovereign Corp, 21 F.3d 1558 (Fed. Cir. 1994); Viam Corp. v. Iowa Export-Import Trading Co., 84 F.3d 424 (Fed. Cir. 1996). These cases dealt with "distribution channels" involving multiple defendants who (1) acted in consort, (2) placed the infringing device in the stream of commerce, (3) knew the likely destination of the products, and (4) whose conduct and connections with the forum

state were such that they should reasonably have anticipated being brought into court there. <u>Viam Corp.</u>, at 429 (citing <u>Beverly Hills Fan</u> at 1566). Unlike these distribution channel cases, AESI is not a defendant accused of infringing activity. Whereas the distribution channel cases involved one defendant directly selling a product that was distributed in the forum by another, there is no evidence here that AESI purchases Gizmos from Scanbuy. According to its affidavits, Scanbuy has not targeted Illinois for its products.

Our situation is closer to the one in <u>Red Wing</u>, where products incorporating the patent in question were sold by licensees of the patent holder in the forum state. Recognizing the "distribution channel" theory relied on in <u>Viam Corp.</u> and <u>Beverly Hills Fan</u>, the Federal Circuit reasoned that while the licensees' (who were not agents of the licensor) products utilizing the patent in question may have reached the forum via the stream of commerce, the licensor had no control over the licensee's activities. <u>Red Wing</u>, 148 F.3d at 1362. Because there was no evidence of coordination between the licensor and the licensee, the "distribution channel" theory was inapplicable. <u>Id.</u> NeoMedia does not offer evidence, other than the hyperlink on Scanbuy's website, that Scanbuy and AESI are aligned in an effort to sell Gizmos. Assuming that NeoMedia's affidavit is true in that the Gizmo Jr. that AESI sold to an Illinois customer utilized software produced or licensed by Scanbuy, Scanbuy's remote benefit from this one

transaction (the only one alleged to have resulted in a product containing Scanbuy software reaching an Illinois consumer) does not create a "constitutionally cognizable contact" with Illinois that would appropriately establish specific jurisdiction. <u>Red Wing</u> at 1361-62 (citing <u>World-Wide Volkswagen</u>, 444 U.S. at 299).

NeoMedia next contends that Illinois should exercise specific jurisdiction over Scanbuy because of its relationship with two companies, is.group, Inc. ("is.group") and Ericsson. Is.group is an Indiana-based buyer's cooperative that purchases office products for member office suppliers. Scanbuy's website describes is.group as a "preferred partner" and contains a hyperlink to is.group's website. Is.group is not alleged to sell products or have offices in Illinois but forty-eight office supply firms in Illinois buy supplies through is.group. NeoMedia makes no allegation that any Illinois firm that buys from is.group has sold an infringing Scanbuy product in Illinois. A press release on Scanbuy's website dated February 11, 2003, states that dealers belonging to is.group "will receive 20 free [Scanbuy ScanClik] scanners to distribute to their customers when they secure a dealer license for the ScanClik system." However, no allegation or affidavit indicates that any Illinois dealer secured a ScanClik license, received a ScanClick scanner, or even that the Scanbuy product in question infringes on NeoMedia's patent. For this reason, NeoMedia cannot rebut Scanbuy's affidavit that no Scanbuy product has been sold in Illinois, making specific jurisdiction

inappropriate. Nor is Scanbuy's strategic partnership with is.group enough to establish general jurisdiction. <u>Red Wing</u> 148 F.3d at 1361-62.

NeoMedia's claims that personal jurisdiction exists because of Scanbuy's association with Ericsson are also not supported by the record. A January 8, 2004, press release on Scanbuy's website proclaims that Scanbuy and Ericsson have announced an association to incorporate Scanbuy technology in future Ericsson products. However, the press release also notes that "no timescale was announced for the incorporation of the technology into new handsets." There is no evidence that Ericsson has initiated the sale of the new products in Illinois and Scanbuy represents that no transaction was ever concluded between the two companies relating to the announced project. Specific and general jurisdiction therefore do not exist based on Scanbuy's relationship with Ericsson.

NeoMedia's final argument for this court to assert personal jurisdiction in Illinois is Andrew Kaboff's (an alleged employee of Scanbuy) residence in Illinois.[9] At the time this lawsuit commenced, Scanbuy's website described Kaboff as its Vice President of Business Development. Scanbuy contends that Kaboff is not an employee but rather an independent contractor who provides marketing consulting services to

---

[9] While NeoMedia's Memorandum mentions that Scanbuy has two employees or independent contractors living in Illinois, it appears that Kaboff is the only Illinois resident to have worked for Scanbuy in any capacity.

Scanbuy and various other technology companies. According to his affidavit, Kaboff works out of his home when doing his consulting work, both for Scanbuy and others, but occasionally travels to New York to meet with Scanbuy officials. Kaboff declares that in providing services for Scanbuy, he has never made a sale to Illinois customers, negotiated deals in Illinois, or targeted Illinois customers. Another Scanbuy affidavit states that Kaboff's work is focused on marketing a single product line in the New York area and that Scanbuy does not pay Kaboff's rent, utility, or phone bills. These assertions are unrefuted by NeoMedia. Scanbuy also provides that at one time it considered Kaboff for a managerial position and prematurely listed him as a vice-president on its website, but later determined that it would not hire Kaboff as an employee and removed his name from the website. Whether Kaboff is considered an independent contractor or employee is irrelevant to our personal jurisdiction analysis. The fact that Scanbuy either employed or utilized the services of an Illinois resident, who happened to work from his home, is not enough to establish the systematic and continuous contacts required for general jurisdiction. Palmer, 644 F. Supp. at 331. Nor can NeoMedia demonstrate that any of Kaboff's activities on behalf of Scanbuy were directed at Illinois, making specific jurisdiction relating to Kaboff unfounded. HollyAnne, 199 F.3d at 1307.

As is the case with AirClic, Scanbuy's cumulative contacts with Illinois are insufficient to support the existence of personal jurisdiction. Because their motions to dismiss are granted, both parties' motions to transfer are denied as moot.

**CONCLUSION**

Based on the foregoing analysis, AirClic's and Scanbuy's motions to dismiss for lack of personal jurisdiction are granted.

Charles P. Kocoras
Chief Judge
United States District Court

Dated: APR 1 5 2004